## 22438.  PYANT *v.* THE STATE.

DECIDED FEBRUARY 20, 1933.

*G. P. Martin,* for plaintiff in error.
*Clifford Pratt, solicitor-general,* contra.

MacINTYRE, J.  Jesse Pyant was convicted of arson, and his motion for a new trial is based solely upon the usual general grounds.

J. B. Wilson testified, in substance, that on October 29, 1931, his barn, located in Jackson county, was burned; that said barn contained much inflammable material that could be easily set on fire with a match; that witness saw the fire just as the clock struck four in the morning and arrived there in a few minutes; that on the night of the fire it rained hard from eleven to twelve o'clock, and then drizzled about an hour; that about daybreak on the morning of the fire, witness found tracks which led from an old empty farmhouse located about three-quarters of a mile from said barn straight to the barn, and that these tracks led back to said farm house and on to within about three or four hundred yards of where the defendant was working at Carl Prickett's, about two and a half miles from said barn; that said tracks were not followed further because they had been obliterated by road machinery; that witness observed that said tracks were made by shoes with inside heel-taps; that when the defendant was arrested he "had the identical shoes that made the tracks that went to the barn, and out of the barn and on down to that old farm-house;" that witness "measured his shoes and examined the heel-taps before he ever got in the car, and they were the identical shoes that made the tracks."

On cross-examination Mr. Wilson testified, in substance, that the defendant's father, Russell Pyant, worked with him as half-cropper in 1931; that said Pyant would not work satisfactorily, and that he and witness had a personal difficulty before the Pyant family left the place; that there was some thunder on the morning of the fire, but witness knew that lightning did not strike the barn, because when he had another house burned by lightning "it shook the whole settlement;" that witness understood the defendant was over at the

barn the evening before the fire, helping the Jones boy milk, "but the rain came after he was there;" that Russell Pyant and defendant were both at the fire; that the defendant did not come to the fire "the way witness tracked him," and "nobody else didn't—there wasn't but two tracks there;" that the defendant went to his work from the fire—"went right through the pasture the same way the tracks came that morning;" and that if the defendant had gone "from his daddy's to Carl Prickett's . . by my barn, it would have been a mile out of the way."

On redirect examination Mr. Wilson testified in part that there was no public road leading to said old farm-house, but that "there was an old road on down through the field, past the house, about one hundred and fifty yards, and there was a path that led to Carl Prickett's;" that there was no sign of a track coming to said farm-house, "indicating that they was in the house when it rained;" and that "nobody in the settlement wears shoes like them."

Tut Wilson testified, in substance, that he had told Mr. Wilson that the defendant had said "he was going to get even with him," but that the defendant had told him no such thing, and witness did not know why he had told a lie about it.

Allen Tucker testified, in substance, that the next day after the fire he went over there, at Mr. Wilson's request, to identify certain tracks; that witness found tracks with "a peculiar heel-tap" that came from the old farm-house and "looked like fresh tracks made after the rain," but that he could not swear that "they went right to the barn all the way, but they came towards the barn;" that witness did not notice any tracks leading from the barn, and did not know who made the peculiar tracks that he saw.

The gist of J. R. Culpepper's testimony was that when one of the guards at the jail asked the defendant if it took much kerosene to burn the barn, the defendant jokingly replied: "No, sir, it burned all right without it."

Allen Wilson testified, in substance, that he saw tracks leading from said old empty farm-house to said barn, and back again three hundreds yards past said farm-house towards Carl Prickett's; that "whoever made these tracks . . was in that house during the rain, because there wasn't any tracks that come to the house;" that "it had rained and there wasn't any tracks around there;" that the shoes that made said tracks "had an iron heel-tap on the inside of

both heels;" that he did not know who made said tracks, but did know that the defendant "had on a pair of shoes that corresponded with these tracks;" and that witness did not know how many people in the community "wore those things on their shoes," and did not see any measurements made of the tracks.

Tom Lord testified, in substance, as follows: "I arrested the defendant the evening after the barn burned. . . He was at Carl Prickett's at a corn shucking. . . The shoes he had on . . had heel-taps on them. . . Mr. Wilson said to him: 'I got you; I tracked you through here from the old house plumb over to Mr. Prickett's;' and Jesse admitted that he had made them that morning when going to his work at Mr. Prickett's, and it was after the rain when he went to Prickett's work from his father's. He denied being in the old house that night when it was raining. He said he went to the fire from his father's house . . when the barn was burning, . . went through the pasture to the barn, and on from the barn to Mr. Carl Prickett's. . . He said them was his tracks he made coming through there by that house going to Mr. Carl Prickett's to work, and when I arrested him he was at Carl Prickett's at work. . . Mr. Wilson told me to look out for shoes that had heel-taps on the inside of the shoes. . . I guess I could have found a heap of that kind if I had looked for them. They sell these kind of things for shoes."

Roscoe Jones testified, in substance, that the defendant got in his "chicken roost," and made the same sort of tracks there as witness saw at said barn after said fire.

C. J. Jones testified, in part, that at about nine o'clock on the night of the fire defendant "went up stairs and went to bed" at defendant's home; that witness was with the defendant when he had heel-taps put on his shoes; that witness had heard the defendant say that he "might get some time," as Mr. Wilson had accused him of burning his barn; and that witness had heard defendant say that his father and Mr. Wilson had had trouble, but that defendant did not say that he was going to get even with Mr. Wilson.

Russell Pyant, the defendant's father, testified at great length, but the most material part of his testimony was that the defendant retired at witness's house long before the fire, and was undressed and in bed when he waked up and told of the fire. He testified also that Mr. Wilson had attacked him with a wrench, and that he

had left Mr. Wilson's place before the fire, and that he had also left the place he had moved to, because Mr. Wilson sent him word by Mr. Fields that he had better leave.

The gist of the defendant's statement at the trial was that he went to bed early at his father's on the night of the fire, and knew nothing about the fire until some one waked him up and told him that the barn was burning.

In the case of *Sutton* v. *State,* 17 *Ga. App.* 713 (88 S. E. 122, 587), the court said: "Where a house is consumed by fire, and nothing appears but that fact, the law presumes that the fire was the result of accident or of some providential cause rather than of criminal design. . . The corpus delicti may, however, be shown by circumstantial as well as direct evidence. . . It is well settled that the corpus delicti can not be proved by the extrajudicial confession of the accused, but must be shown by evidence aliunde the confession or incriminatory admission." In the case of *Cummings* v. *State,* 110 *Ga.* 293 (35 S. E. 117), the court said: "Though the State's evidence very strongly and conclusively tended to establish the fact that tracks seen near the place of the crime, and which must have been made on the night it was committed, corresponded in minute particulars with shoes belonging to the accused, this, without more, was not sufficient to show to the exclusion of every reasonable hypothesis that he committed the crime." In *McDaniel* v. *State,* 53 *Ga.* 253, it was held: "The evidence in this case, consisting as it does wholly of facts going to show that certain foot-tracks found leading from fodder stacks resembled the tracks usually made by the prisoner, without any evidence that the tracks found were recent, and that the prisoner had an unusual or peculiar track ['the defendant's boots had metal and brads on the heels'], and other evidence to aid the opinion of the witnesses, does not justify the verdict." See also, in this connection, *Burley* v. *State,* 6 *Ga. App.* 776 (65 S. E. 816); *West* v. *State,* 6 *Ga. App.* 105 (64 S. E. 130); *Shannon* v. *State,* 57 *Ga.* 482.

Applying the above rulings to the evidence in the case at bar, and after a very careful study of the facts in this case, we have reached the conclusion that the evidence does not support the verdict, and therefore the court erred in overruling the motion for a new trial.

*Judgment reversed.* *Broyles, C. J., and Guerry, J., concur.*